G. L. RUGO & SONS, INC. *vs.* TOWN OF LEXINGTON.

Suffolk. March 2, 1959. — April 2, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Contract,* Building contract. *Architect. Arbitration.*

In an article of a building contract providing that the architect "shall decide all questions which may arise as to the quality, quantity, acceptability, fitness and rate of progress of the several kinds of work and materials to be performed and furnished under the contract, and shall decide all questions which may arise as to the interpretation of the plans and specifications and as to the fulfillment of the contract on the part of the . . . [contractor], and his determination and decision shall be final and conclusive," the clause relating to the interpretation of the plans and specifications was not subordinate to the clause relating to the quality of the work but was independent therefrom, and a decision by the architect that certain work was required of the contractor by the plans and specifications and was not an extra was conclusive and binding on the parties to the contract. [749–751]

There was no "discrepancy" between an article of a building contract providing that the "determination and decision [of the architect respecting the interpretation of the plans and specifications] shall be final and conclusive" on the parties to the contract and the article following providing that any controversy arising under the contract should be submitted to arbitration and the arbitrators should "determine the controversy," nor was the power of the architect to decide a question within the ambit of his authority transferred to the arbitrators by a clause in the arbitration article providing that "in event of any discrepancy between this article . . . and other provisions of . . . [the contract] the provisions of this article . . . shall govern." [751]

Where a controversy arose between the parties to a building contract as to whether certain work was required of the contractor by the plans and specifications or was an extra and the architect, under an article of the contract providing that he should "decide all questions which may arise as to the interpretation of the plans and specifications . . . and his determination and decision shall be final and conclusive," decided that such work was required by the plans and specifications, but the contractor submitted the question to arbitrators in accordance with another article providing for arbitration of any controversy and that the arbitrators should "determine the controversy in accordance with the law of Massachusetts as applied to the facts found by . . . them," the arbitrators, although finding that such work constituted an extra, properly within their authority considered the effect of the first article making the architect's decision final and conclusive and correctly ruled accordingly that the contractor was not entitled to payment for such work as an extra. [751–752]

AWARD IN ARBITRATION filed in the Superior Court on February 11, 1958.

The case was heard by *Sullivan*, J., who denied motions by the plaintiff to correct the award and for judgment thereon, and allowed a motion by the defendant for judgment on the award. The plaintiff appealed and alleged exceptions.

*Robert F. White*, (*John J. Grady* with him,) for the plaintiff.
*Harold E. Stevens*, Town Counsel, for the defendant.

SPALDING, J. The plaintiff and the defendant entered into a contract in writing dated May 25, 1955, for the erection of a school building in Lexington. During the course of the work disputes arose as to whether the contract called for strapping the ceilings of the first floor classrooms and administration areas, and whether it called for the strapping of the ceilings of the cafeteria and auditorium to be twelve inches on center or sixteen inches on center. Pursuant to article 39 of the supplementary general conditions of the contract the controversy was submitted to the architect, who decided that the contract called for strapping the ceilings of the first floor classrooms and administration areas, and required the strapping of the ceilings of the cafeteria and auditorium to be twelve inches on center. The plaintiff installed the strapping in accordance with the architect's determination, and submitted the question whether this

work constituted an extra to a panel of three arbitrators in the manner provided in article 40 of the supplementary general conditions of the contract. That article reads in part: ". . . ARBITRATION: If any controversy arises under the contract which may legally be submitted to arbitration, it shall be determined by arbitration pursuant to chapter 251 of the Massachusetts General Laws as amended. . . . The arbitrator or arbitrators shall determine the controversy in accordance with the law of Massachusetts as applied to the facts found by him or them, and at the request of either party shall refer any questions of law to the proper court. In event of any discrepancy between this article 40 and other provisions of the general conditions, the provisions of this article 40 shall govern."

The panel made an independent examination of the plans and specifications and found, one arbitrator dissenting, that the strapping installed by the plaintiff constituted an extra. The total fair cost of this work was computed at $3,795.92. But the panel concluded that the controversy was governed by the clause in article 39 which provides that the architect "shall decide all questions which may arise as to the interpretation of the plans and specifications and as to the fulfillment of the contract on the part of the contractor, and his determination and decision shall be final and conclusive." Accordingly, the arbitrators ruled that the architect's decision on the question of strapping was final and conclusive, and for that reason the plaintiff was not entitled to payment.

The arbitrators' award was filed in the Superior Court. See G. L. c. 251, § 8. The plaintiff submitted motions to correct the award and to enter judgment for it on the award, which were denied. The defendant moved for entry of judgment on the arbitrators' award and the motion was allowed.

The question of the correctness of these rulings is brought here by appeal (G. L. c. 251, § 12) and by exceptions. Since all the questions sought to be raised are open on the exceptions, there is no need to consider the appeal and it is dismissed.

1. The plaintiff's principal contention is that the contract, properly construed according to the law of Massachusetts, does not sustain the arbitrators' conclusion that the architect's decision settled the controversy. This contention is grounded upon an assertion that the clause in article 39 upon which the arbitrators relied was taken out of context, and that article 39, when read as a whole, makes the architect the final arbiter as to questions concerning the quality of the work, but not as to what work was required by the plans and specifications.

That part of article 39 material here provides: "The architect shall decide all questions which may arise as to the quality, quantity, acceptability, fitness and rate of progress of the several kinds of work and materials to be performed and furnished under the contract, and shall decide all questions which may arise as to the interpretation of the plans and specifications and as to the fulfillment of the contract on the part of the . . . [plaintiff], and his determination and decision shall be final and conclusive . . . ."

The plaintiff argues that the clause relating to the interpretation of the plans and specifications is subordinate to the clause relating to the quality of the work, and relies upon the decision of this court in *Morgan* v. *Murdough,* 216 Mass. 502. The contract involved in that case conferred the power of final decision upon the architect only with regard to questions concerning ". . . the quality, acceptableness and fitness of the several kinds of work and materials . . . to be included in . . . [the] contract . . . ." It was held that this clause did not give the architect power to decide conclusively that certain marble dado work was required by the plans and specifications and was not an extra. His power was limited to disputes relating "to the quality or character of the work performed or the materials furnished," a dispute of a different nature.

But a case much closer to the case at bar is *Norcross* v. *Wyman,* 187 Mass. 25. There the relevant portion of the contract provided: "The architects shall be the sole interpreters of their drawings and these specifications, and

. . . their decision upon all questions relative to drawings, specifications or contract for the said building shall be final and binding upon the owner and the contractor." A question arose as to whether work done in connection with the foundation, due to the existence of an unforeseen quicksand, was an extra. The architects decided that it was, and the parties submitted the dispute to arbitration under R. L. c. 194, a predecessor, in part, of G. L. c. 251. The arbitrator ruled that the architects were authorized to act on the question and that their decision was binding on the parties. On appeal this court upheld the arbitrator's ruling. The authority of *Norcross* v. *Wyman, supra,* was not impaired by anything decided in the *Morgan* case. In the *Morgan* case the authority of the *Norcross* case was recognized but was held not to be controlling on the ground that the grant of power then before it was more restricted than that involved in the *Norcross* case.

Article 39 of the contract grants to the architect both the power involved in the *Morgan* case and the power involved in the *Norcross* case. The plaintiff's argument that the second power is subordinate to the first power must be rejected. We are of opinion that a natural reading of the contract can result only in the conclusion that the two clauses are independent each from the other. The second clause confers the power to decide "*all* questions which may arise as to the interpretation of the plans and specifications" (emphasis supplied). There is no internal evidence that this power was to be exercised only with regard to the quality and quantity of the several kinds of work and materials referred to in the first clause. "The ordinary and natural scope and effect to be attributed to any article are not to be restricted or limited by undue emphasis accorded to some other provision." *J. F. Fitzgerald Constr. Co.* v. *Southbridge Water Supply Co.* 304 Mass. 130, 135.

We are of opinion that the case at bar is governed in principle by *Norcross* v. *Wyman, supra,* rather than by *Morgan* v. *Murdough, supra.* The decision of the arbitrators, therefore, that the architect's determination was valid and bind-

ing upon the parties was correct and in accordance with the "law of Massachusetts" as required by article 40. *Norcross* v. *Wyman*, 187 Mass. 25, 28. *Marsch* v. *Southern New England R.R.* 230 Mass. 483, 493. *Benjamin Foster Co.* v. *Commonwealth*, 318 Mass. 190, 209.

2. The plaintiff next relies upon the provision of the article dealing with arbitration that "In event of any discrepancy between this article 40 and other provisions of the general conditions, the provisions of this article 40 shall govern." The plaintiff urges that this provision transfers the power of final decision from the architect to the arbitrators since the power of final decision conferred upon the architect by article 39 conflicts with the power conferred upon the arbitrators by article 40 to decide the controversy in accordance with the law of Massachusetts as applied to the facts.

We perceive no "discrepancy" between the express grant of final authority to the architect in article 39 and the powers of the arbitrators in article 40. Nothing in article 40 empowers the arbitrators to override the decisions of the architect on questions within the ambit of his authority. Upon submission only two issues were open to the arbitrators: (1) whether the architect acted within the scope of his powers, and (2) whether he was guilty of any fraud or bad faith in making his decision. See *Hurley* v. *Boston*, 244 Mass. 466, 470–471. These issues were presented to the arbitrators here and, in addition to finding that the architect's decision was binding, they found specifically that in making it he was "not guilty of fraud, bad faith or failure to exercise honest judgment."

3. The plaintiff also contends that the arbitrators exceeded the scope of the agreement of submission by considering the effect of article 39. It is said that the arbitrators had authority only "to determine the controversy in accordance with the law of Massachusetts as applied to the facts found by them," and the facts found by the arbitrators were to the effect that the work constituted an extra.

The arbitrators did not exceed their authority by considering the effect of article 39. Indeed, the reference to the

law of Massachusetts required them to do so. *Norcross* v. *Wyman, supra.* The existence of article 39 was a fact, and the terms of the article are set forth in the findings of the arbitrators.

4. The further contentions that the arbitrators reached a conclusion contrary to their own theory of the case and that the arbitrators intended to leave the decision as to the interpretation of the contract to the court are without merit and do not require discussion.

*Appeal dismissed.*
*Exceptions overruled.*