**MOUNT TIVY WINERY, Inc., v. LEWIS, Collector of Internal Revenue, et al.**

No. 20473–S.

District Court, N. D. California, S. D.

Jan. 10, 1942.

Robert H. Fouke, of San Francisco, Cal., for plaintiff.

Frank J. Hennessy, U. S. Atty., and W. F. Mathewson, Asst. U. S. Atty., both of San Francisco, Cal., for defendants.

ST. SURE, District Judge.

Plaintiff sues to recover $15,419.33, with interest, claimed to have been illegally imposed and collected by defendants under the Liquor Taxing Act of 1934, 48 Stat. 313.

The complaint contains two counts. The first states a claim for recovery, if justified by the law and the evidence. The second adopts the allegations of the first, by reference, and adds that section 10(c)[1] of the Liquor Taxing Act of 1934, under the provisions of which the taxes were assessed and collected, violates Article I, section 2, clause 3, and Article I, section 9, clause 4 of the Constitution of the United States of America.

The case was submitted upon a stipulation of facts and briefs of respective parties. There are six other cases in which the stipulated facts are similar, and all seven cases were consolidated for trial. The decision in the instant case is determinative of all. The plaintiffs in the other cases, and the amounts each seeks to recover, with interest, are as follows:

California Wineries and Distilleries, Inc., a California corporation, No. 20464–R, $13,449.80;

Fresno Winery Inc., a California corporation formerly known as Elsinore Winery, Inc., a corporation, and Lucerne Winery, Inc., a corporation, No. 20465–L, $6,602.52;

Santa Lucia Wineries, Inc., a California corporation, No. 20466–R, $13,918.00;

Charles Dubbs and Samuel Caplan, co-partners doing business under the firm name and style of Alta Winery, No. 20467–S, $7,430.57;

California Growers Wineries, a California corporation, No. 20474–W, $29,923.55;

St. George Winery, a California corporation, No. 21113–L, $10,577.23.

The defendants are identical in all of the cases.

Defendants question the jurisdiction of the court as to the suit against United States. There is some discussion in the briefs as to whether the court takes jurisdiction under 28 U.S.C.A. § 41, subd. (20)[2] (which is part of the Tucker Act), or subd.

---

[1] "Upon all wines held by the producer thereof upon January 12, 1934, and intended for sale or for use in the manufacture or production of any article intended for sale, there shall be levied, assessed, collected, and paid a floor tax equal to the amount, if any, by which the tax provided for under section 443 of this title exceeds the tax paid upon the grape brandy or wine spirits used in the fortification of such wine." 48 Stat. 315,

26 U.S.C.A. § 451b, 1934 Cumulative Annual Pocket Part.

[2] "The district courts shall have original jurisdiction as follows: * * * (20) * * * of any suit or proceeding commenced after the passage of the Revenue Act of 1921, for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority or any

(5).[3] It is obvious that the 1921 amendment to subd. (20) extended the jurisdiction of the District Court so as to embrace suits against United States where the claim exceeds $10,000, if the Collector of Internal Revenue by whom the tax was collected is no longer in office when suit is filed. As that is true in this case, the court takes jurisdiction of the United States, if at all, under subd. (20).

■ The procedure for suits against the United States under 28 U.S.C.A. § 41(20) is regulated by §§ 5 and 6 of the Tucker Act, 28 U.S.C.A. §§ 762, 763. Title 28 U.S.C.A. § 763 provides that "plaintiff shall cause a copy of his petition * * * to be served upon the" United States District Attorney "in the district wherein suit is brought, and shall mail a copy of the same, by registered letter, to the Attorney General * * *," and shall file with the Clerk of the court an affidavit of such service. "This procedure must be complied with strictly. Reid Wrecking Co. v. United States, D.C., 202 F. 314, and all its requirements must be met before the commencement of the action can be effected." Bachman, Emmerich & Co. v. United States, D.C., 21 F.Supp. 682, 684; see also Reid v. United States, 211 U.S. 529, 538, 29 S.Ct. 171, 53 L.Ed. 313; Munro v. United States, 303 U.S. 36, 40, 58 S.Ct. 42, 82 L.Ed. 633. The requirements for service are jurisdictional.

Here service was made upon the United States Attorney of this District on January 30, 1939. A stipulation filed herein on November 1, 1941 (more than five months after trial) states that the Attorney General was served on February 28, 1939. As the claim which was the basis of this action was rejected on July 29, 1936, both services were made after the expiration of the two-year limitation allowed by 26 U.S.C.A. Int. Rev.Code, § 3772(a) (2).[4]

■ Although this suit was filed on July 28, 1938, (the last day on which it could have been filed under the two-year limitation), plaintiff argues that service as prescribed by 28 U.S.C.A. § 763 is merely procedural and not substantive, and therefore, since the adoption of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, effective September 16, 1938, such service is not necessary to commence an action against the United States, citing Rule 3,[5] Rule 4(d) (4),[6] and United States v. American Surety, D.C., 25 F.Supp. 700, 702. On the question of whether the new Rules apply to the Tucker Act, a careful examination of the law on this subject[7] shows that some courts have held that the

---

sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws even if the claim exceeds $10,000, if the collector of internal revenue by whom such tax, penalty, or sum was collected is dead or is not in office as collector of internal revenue at the time such suit or proceeding is commenced."

[3] "Of all cases arising under any law providing ror internal revenue, or from revenue from imports or tonnage, except those cases arising under any law providing revenue from imports, jurisdiction of which has been conferred upon the Court of Customs Appeals."

[4] "No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the Commissioner renders a decision thereon within that time, nor after the expiration of two years from the date of mailing by registered mail by the Commissioner to the taxpayer of a notice of the disallowance of the part of the claim to which such suit or proceeding relates."

[5] "A civil action is commenced by filing a complaint with the court."

[6] " * * * Service shall be made as follows: * * * (4) Upon the United States, by delivering a copy of the summons and of the complaint to the United States attorney for the district in which the action is brought or to an assistant United States attorney or clerical employee designated by the United States attorney in a writing filed with the clerk of the court and by sending a copy of the summons and of the complaint by registered mail to the Attorney General of the United States at Washington, District of Columbia, and in any action attacking the validity of an order of an officer or agency of the United States not made a party, by also sending a copy of the summons and of the complaint by registered mail to such officer or agency."

[7] United States v. American Surety, D.C., 25 F.Supp. 700, 702; Sherwood v. United States, 2 Cir., 112 F.2d 587, 590, reversed United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058; Boerner v. United States, D.C., 26 F. Supp. 769. See, also, Gallagher v. Carroll, D.C., 27 F.Supp. 568; Schram v. Koppin, D.C., 35 F.Supp. 313; Schram v. Costello, D.C., 36 F.Supp. 525; Schram

Rules prevail over the Tucker Act. However, I am of the opinion that as the Tucker Act is a special statute with special procedure outlined by Congress, the New Rules are inapplicable. Lynn v. United States, 5 Cir., 110 F.2d 586; United States v. Sherwood, 312 U.S. 584, 586, 587, 61 S. Ct. 767, 85 L.Ed. 1058. From the discussion of Rules 3 and 4 before the Judiciary Committee of the House of Representatives, 75th Congress, Third Session, Hearings on the Rules of Civil Procedure and H.R. 8892, March 1–4, 1938, Serial 17, pages 73 ff., it appears that the Committee considered a statute of limitations substantive law and intended that the Rules should govern only where there was no Federal or state statute on the subject. A suit against United States, filed under 28 U.S.C.A. § 763, is not "commenced" until the service mentioned is made. As service in this case was made after the expiration of the two-year period allowed by 26 U.S.C.A. Int.Rev.Code, § 3772(a) (2), the right of action against United States ceased, and the subsequent adoption of the new Rules did not revive it.

It is true that in United States v. Sherwood, supra, the Supreme Court approved dismissal for want of jurisdiction where an individual had been joined in the suit against the United States. However, dismissal of the entire action would not be proper here, because this court has jurisdiction of the Collector of Internal Revenue under 28 U.S.C.A. § 41(5), which requires no special service on the United States Attorney of this District and on the United States Attorney General.

I therefore conclude that as necessary service to effect commencement of the action as required by 28 U.S.C.A. § 763 was not made within the two-year period specified in 26 U.S.C.A. Int.Rev.Code, § 3772(a) (2), this court has no jurisdiction over defendant United States, but has jurisdiction over the Collector under 28 U.S.C.A. § 41 (5).

In three of the companion cases mentioned above, namely, No. 20464–R, No. 20474–W, and No. 21113–L, service as required by the Tucker Act, 28 U.S.C.A. § 763, was made within the two year period specified in 26 U.S.C.A. Int.Rev.Code, § 3772(a) (2), so that in those cases this court would have jurisdiction of the United States as well as of the Collector of Internal Revenue; but in view of my holding against plaintiff in all cases, the point becomes immaterial.

Plaintiff contends that § 10(c) of the Liquor Taxing Act of 1934 violates Art. I, Sec. 2, Cl. 3, and Art. I, Sec. 9, Cl. 4 of the United States Constitution, in that it levies a direct tax without proper apportionment. There is no merit in this contention. In Commonwealth of Pennsylvania v. Fix, D.C., 9 F.Supp. 272, 275, 276, affirmed in Commonwealth of Pennsylvania v. Kyle, 3 Cir., 79 F.2d 520, certiorari denied 297 U.S. 704, 56 S.Ct. 442, 80 L.Ed. 992, the court held that the tax levied by § 10(c) is an excise tax, and as such, constitutional.

In one of its briefs plaintiff attempts to make another constitutional point, stating: "Imposition of the tax upon merely one part of a class of persons deprives such persons of the 'equal protection of the laws' under the due process clause of the United States Constitution, hence the tax is unconstitutional for this, as well as other reasons noted. Fifth Amendment to the Constitution of the United States (Article V)." This loose language, without explanation or authority, is plaintiff's only reference to the Fifth Amendment. The constitutionality of a statute cannot be raised for the first time in argument. It must be properly pleaded and thereafter adequately argued. Kewanee Oil & Gas Co. v. Mosshamer, 10 Cir., 58 F.2d 711, 712; White Cleaners & Dyers v. Hughes, D.C., 7 F. Supp. 1017, 1023; Taylor v. Dunbar, D.C., 298 F. 936, 939. A court should proceed with reluctance to set aside legislation as unconstitutional· on grounds not properly presented. McGoldrick v. Compagnie Generale, 309 U.S. 430, 434, 60 S.Ct. 670, 84 L. Ed. 849. Moreover, "There is strong presumption in favor of the constitutionality and validity of an act of Congress." Jacobs v. Peavy-Wilson Lumber Co., D.C., 33 F.Supp. 206, 212, and cases cited. The mere fact of enactment of a statute raises a presumption of constitutionality, and the

v. Cudnau, D.C.E.D.Mich., decided December 26, 1940; Hackner v. Guaranty Trust Co. of New York, 2 Cir., 117 F.2d 95; Federal Rules Service with Findex, Vol. 4, pp. 882–887; "Federal Rules of Civil Procedure and Proceedings of the American Bar Association Institute, Cleveland, 1938", pp. 183 and 202–203; "Federal Rules of Civil Procedure, Proceedings of Institutes, Washington and New York, 1938, Published by American Bar Association", pp. 34–35; New Federal Procedure and the Courts, by Alex Holzoff, 1940, pp. 16, 17.

burden of proving otherwise is on the party so asserting. Kewanee Oil & Gas Co. v. Mosshamer, 10 Cir., 58 F.2d 711, 712. Plaintiff has failed to sustain that burden. The additional point was probably thrown in, hit or miss, but has no application whatever to the pertinent issue of the levy and collection of an excise tax on liquor, the validity of which is settled by the decision in Commonwealth of Pennsylvania v. Fix, supra. For a full discussion of the subject see Patton v. Brady, 184 U.S. 608, 22 S.Ct. 493, 46 L.Ed. 713.

Upon the merits, plaintiff contends that it is not liable for the tax because on the effective date of the taxing act, January 12, 1934, the liquor was "held" by the Bank and not by plaintiff.

Plaintiff is a large winery, engaged in the manufacture and production of wines "intended for sale or for use in the manufacture or production of any article intended for sale", as set forth in Section 10(c) hereinabove mentioned. In the latter part of 1933 plaintiff placed the liquor in question in a bonded warehouse, taking four negotiable warehouse receipts, which were delivered to Bank of America under a "collateral pledge agreement," as security for a loan to plaintiff.

"Under the Uniform Warehouse Receipts Act, the warehouseman is ordinarily bound to deliver the goods upon a demand made * * * by a holder of a receipt for the goods * * * if such demand is accompanied with an offer to satisfy the warehouseman's lien, an offer to surrender the receipts if negotiable and a willingness to sign an acknowledgment of delivery." 25 Cal.Jur. p. 955, Section 12; Uniform Warehouse Receipts Act, Section 8. Here the Bank, the holder of the receipt, could not properly demand plaintiff's wine from the warehouseman except under certain conditions set forth in the "collateral pledge agreement" between plaintiff and the Bank. As these conditions never matured, the Bank never acquired the right to negotiate the receipts. The "collateral pledge agreement" refers to the Bank as "pledgee or trustee," and provides that in case of sale the surplus was to be "subject to the order of" plaintiff.

■ The warehouse receipt is only prima facie evidence of ownership. Akron Cereal Co. v. First National Bank, 3 Cal. App. 198, 201, 202, 84 P. 778. The title to the liquor was in plaintiff, the pledgor. The Bank never had any more than a pledgee's rights under the terms of the collateral agreement. As contended by defendants, the storing of the wine in a bonded warehouse and the issuing of warehouse receipts therefor was a transaction for the accommodation of plaintiff and created only a debtor-creditor relationship between plaintiff and the Bank, and did not in any way relieve plaintiff of its liability to pay the tax. The word "held" implies ownership, McFeely v. Commissioner, 296 U.S. 102, 107, 56 S.Ct. 54, 80 L.Ed. 83, 101 A.L.R. 304, but does not always imply possession, Ogle v. Helvering, 2 Cir., 77 F.2d 338, 339; Commissioner v. Nevius, 2 Cir., 76 F.2d 109.

■ Plaintiff's argument that it could not set up its own title "to defeat the pledge of the property by the warehouse to the Bank" is untenable, because if either the Bank or the warehouseman should refuse to deliver the liquor to plaintiff after plaintiff had carried out its contractual obligations, plaintiff could file suit to assert its title and recover its pledged property. 3008, California Civil Code; Bell v. Bank of California, 153 Cal. 234, 238, 94 P. 889; Brittan v. Oakland Bank, 124 Cal. 282, 57 P. 84, 71 Am.St.Rep. 58; Hunsaker v. Sturgis, 29 Cal. 142, 145. Plaintiff at all times asserted ownership of the liquor, as shown by its verified inventory and return to the Collector of Internal Revenue.

I conclude that the liquor in question was "held" by plaintiff within the meaning of Section 10(c) on the effective date thereof.

Judgment will go to defendants with costs.